IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

KELLY V. KELLY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

KELLY M. KELLY, APPELLANT,

V.

SEAN M. KELLY, APPELLEE.

Filed February 9, 2021.    No. A-20-364.

Appeal from the District Court for Douglas County: KIMBERLY MILLER PANKONIN, Judge. Affirmed in part, and in part reversed and remanded with directions.

Lindsay Belmont and Katherine Vogel, of Koenig Dunne, P.C., L.L.O., for appellant.

Edith T. Peebles, of Brodkey, Cuddigan, Peebles, Belmont & Line, L.L.P., for appellee.

PIRTLE, Chief Judge, and MOORE and ARTERBURN, Judges.

MOORE, Judge.

## I. INTRODUCTION

Kelly M. Kelly (Kelly) appeals from an order entered by the District Court for Douglas County, denying Kelly's request for modification of physical custody of the parties' minor child and granting Sean M. Kelly's (Sean) counterclaim for modification of custody and child support. Kelly challenges the provisions of the order that granted Sean final decisionmaking authority, modified the parenting plan, placed a limitation on Kelly's ability to report alleged abuse of the child, modified the child support, and awarded Sean attorney fees. For the following reasons, we affirm in part and in part reverse and remand on the issues of limitation of reporting and child support.

- 1 -

## II. BACKGROUND

### 1. PROCEDURAL HISTORY

Kelly and Sean were married in 2008 and one child, a daughter, was born to the marriage in 2014. On June 8, 2017, a decree of dissolution was entered by the district court, dissolving Kelly and Sean's marriage. The decree awarded joint physical and legal custody of the parties' minor child and ordered Sean to pay Kelly $1,000 per month in child support, an upward deviation from the support guidelines in lieu of expense-sharing for the parties' child.

On December 11, 2018, Kelly filed a complaint to modify the decree seeking legal custody of the parties' child and a recalculation of child support to reflect Kelly's cost of providing health insurance for the child. Kelly alleged that a material change in circumstances had occurred to warrant modifying legal custody including conflict regarding decisions for the child's medical and psychological well-being. Sean filed an answer and counterclaim, seeking modification of the legal custody of the child and a recalculation of child support. Sean alleged that a material change in circumstances had occurred warranting a change in legal custody including Kelly's unjustified claims without investigation, Kelly's refusal to coparent, and that Kelly "destabilizes" their daughter due to her perpetuating investigations. With regard to child support, Sean alleged that a change had occurred because of his unemployment due to no fault on his part.

On September 3, 2019, Kelly filed an amended complaint seeking both legal and physical custody of the child, recalculation of child support, and modification to the parenting plan to incorporate safety provisions for the child, to modify vacation time, and to provide for improved communications between the parties.

Trial was held on November 25, 2019, and continued on December 10 and 16, 2019, and January 10, 2020. On the first day of trial Kelly subpoenaed several witnesses to appear at 9:30 a.m., including Dr. Erin Louck, the child's pediatrician, and Kristina Johnson, a nurse practitioner who completed a forensic interview of the child. The witnesses, including Dr. Louck, appeared but did not testify that day. The beginning of trial was delayed on this day due to ongoing settlement efforts of the parties. The settlement negotiations continued all morning, and at noon, the parties agreed that the witnesses could be excused for the day. Settlement negotiations were not successful and the trial began mid-afternoon on the first day.

On the second day of trial, Kelly again reissued subpoenas for her witnesses, including Dr. Louck. Counsel for Dr. Louck appeared and moved to quash her subpoena. Louck's affidavit was received in evidence which stated that she had a completely full patient caseload that day and could not appear. Louck's affidavit also stated that she is a mandatory reporter with regard to allegations of child abuse. Louck noted that she made a report in this case but did not form any opinions or conclusions on whether or not abuse occurred to the child. Louck's affidavit further noted that she always errs on the side of caution in reporting, but does not participate in the investigation. Louck's clinical notes from a visit with the child on September 26, 2019, were also admitted into evidence, but the notes contain no allegations of abuse.

Louck's counsel argued that Louck's appearance would be an undue burden, that Louck has no opinion on whether any abuse or neglect occurred, and that anything she would have to offer is documented in her medical records. Kelly's attorney argued that Louck's testimony was necessary to establish that she was a mandatory reporter who made a report regarding abuse, which

testimony was necessary to rebut Sean's assertion that Kelly was making claims that were not warranted. Kelly's attorney also noted that she was led to believe that Louck did not see patients on Mondays, and that her subpoena was for a 15-minute period only. The court granted the motion to quash Louck's subpoena.

Kelly also reissued a subpoena for Kristina Johnson on the second day of trial. Johnson failed to appear. Kelly requested a continuance pursuant to Neb. Rev. Stat. § 25-1239 (Reissue 2016) due to Johnson's absence, which the court denied. The trial court denied Kelly's request to continue, stating:

> I'm not continuing this matter. This case will be finished today, and I think I've made that clear. The parties indicated one day. Most of the Court's day was wiped out by the parties' negotiation, which I will never stop because I think it's better if you have some input into a decision as reasonable parents. But, obviously, that fell apart at the end of the day. I scheduled another day, and we will proceed.

The following evidence was presented at trial.

## 2. BACKGROUND

### (a) Behavioral Issues

Kelly testified that the child began seeing Dr. Jennifer Burt, a behavioral psychologist, in 2017 prior to the divorce. Kelly testified that the parties initially engaged Dr. Burt's services when the child was having behavioral issues at her first preschool. The behavioral issues at school included emotional outbursts, aggression, and physical altercations with her peers and teachers, as well as similar issues at home. Kelly testified that Sean was initially supportive of the child receiving behavior therapy, but that the parties eventually disagreed on appropriate treatment for the child. The child was enrolled at a second preschool, where similar incidents began occurring.

Kelly described one incident in November 2018, when the child had an outburst that caused her preschool to evacuate the rest of the children and most of the teachers due to the child's behavior. Kelly testified that the child had torn apart the school room, was running around the room, and was unresponsive to both parents and teachers. After Kelly went to the school to respond to the incident, she requested that Sean take the child to a doctor to determine if the child was having a physical reaction to something or a panic attack, but Sean refused as he did not believe the child needed medical care. Kelly testified that after the incident she called the Department of Health and Human Services (DHHS), poison control, and the child's school to rule out any reaction to substances as the cause of the outburst.

Following the behavioral issues at the second preschool, it was recommended that the parties seek an individualized education program (IEP) for the child. Kelly testified that at the time they initially were seeking an IEP, she lived in the Millard school district and Sean lived in the Omaha Public School (OPS) district. Kelly testified that the parties had a disagreement on where to seek out an IEP, but eventually chose to have the child evaluated with OPS. Following the IEP evaluation, the parties' decided to enroll the child at the Westside school district using Sean's significant others' address, as it was a midpoint for the parties and the school district accepted the IEP evaluation from OPS. However, the child eventually lost IEP services because neither parent

- 3 -

resided in the district. At the time of trial, the parties disagreed on where to enroll the child for kindergarten.

(b) Abuse Allegations

Kelly testified that in the weeks prior to the November 2018 incident at the child's school, the child had disclosed that she had been playing "the tickle vagina game" with Sean's mother and seemed upset. After this disclosure, Kelly called Dr. Burt's office, where she was told that if she had concerns she should file a police report and call Project Harmony. Kelly testified that she consulted with DHHS, who told her to take the child to the emergency room for an examination. Kelly testified that she filed a report and took the child for an examination on November 25, 2018. The child was given a medical examination, which "neither confirm[ed] or exclude[ed] the possibility of sexual abuse" and noted that any abnormality appeared to relate to poor hygiene. A social worker at the emergency department made a police report based on the allegations of sexual abuse.

On November 27, 2018, Kelly took the child to Project Harmony for a forensic interview. The child met with Kristina Johnson, a nurse practitioner, and reiterated that she had played the "tickle vagina game" with Mary, her grandmother. Project Harmony notified child protective services (CPS) of the interview results. As noted above, an affidavit from Dr. Louck, the child's pediatrician, was received into evidence in which she states that she had no opinion on whether or not abuse occurred. Sean testified that the investigation of this incident had concluded and determined the abuse claims were unfounded.

Sean also testified that Kelly had reported alleged abuse to DHHS several times prior to this incident, but all reports were unconfirmed or unfounded following investigations. Kelly testified that at the time of trial, there were no open cases or investigations of abuse by any agency.

(c) Therapy Recommendations

Mackenzie Berg, a family advocate with Project Harmony, recommended that the child receive trauma-informed therapy. Berg testified that in order for a child to receive therapy from Project Harmony, consent of both parents is required. Kelly provided her consent to allow the child to receive therapy from Project Harmony, but Sean refused. Sean testified that he did not agree with the child receiving trauma-informed therapy because of the ongoing investigation, and that he wanted to get the opinion of other mental health professionals that the child had worked with. On January 17, 2019, the court entered a temporary order requiring both parties to comply with the recommendations for additional professional treatment from the child's therapist, Dr. Jennifer Burt. Kelly filed a motion to compel therapy on April 4, 2019. The district court entered a motion to compel therapy on May 13, ordering a custodial evaluation of the parties and the child by Dr. Glenda Cottam.

Dr. Cottam, a clinical psychologist and legal mediator, evaluated both parents and the child. Dr. Cottam summarized her assessment of both parents, opining that both were fit parents, each with their own strengths and challenges. Dr. Cottam noted that there was some anxiety in both Kelly and the child regarding the transition from one parent to another, so it would make the most sense to have pick-ups and drop-offs at school or daycare where there is less tension between Kelly and Sean.

Dr. Cottam also opined that the child needed a good therapist who has experience with art and play therapy, and did not recommend that the child seek trauma therapy. Dr. Cottam further opined that trauma-based therapy when there is no evidence of trauma could do more harm to a child rather than help, and therefore it would be more prudent to withhold a recommendation for trauma-based therapy at the time.

### (d) Health Insurance

The original decree required Sean to pay for health insurance of the child. At the time of the divorce, Sean provided health insurance for the child through his employer. However, he subsequently lost his job and Kelly began providing health insurance for the child in November 2018 and continuing through the time of trial.

### (e) Sean's and Kelly's Incomes

At the time of trial, Sean was employed as a sales manager, earning a salary of $120,000 per year. Sean also receives $376.13 per month from his employer as a reimbursement for use of his personal vehicle. Sean also owns all or part of several limited liability companies that have rental properties. However, Sean testified that he does not earn income from the rental properties, as any rents collected are consumed by the expenses of his companies. On his past two tax returns at the time of trial, Sean reported total rental business losses of $77,000 in 2017 and $1,500 in 2018.

Kelly was employed as a senior transportation marketing coordinator at an engineering firm at the time of trial, and testified that she had just transitioned into a salaried position at the end of August 2019. Kelly testified that since she is now salaried, she will no longer be receiving overtime pay. Kelly earned $71,326.48 in 2018, of which $10,393.30 was overtime pay. According to her most recent pay stub dated November 1, 2019, Kelly had earned $60,648.42 in 2019, and following becoming a salaried employee, she was earning a gross amount of $2,564.08 every 2 weeks. Of her earnings in 2019, $2,622.36 was overtime pay.

### 3. TRIAL COURT'S ORDER

Following Kelly's presentation of evidence, Sean moved for a directed verdict regarding Kelly's request for physical custody, arguing that Kelly failed to demonstrate a material change in circumstances. The court granted Sean's motion for a directed verdict regarding physical custody, finding that Kelly failed to make a prima facie case demonstrating a material change in circumstances. Kelly does not assign error to this ruling on appeal.

On May 6, 2020, the trial court entered an order of modification, ordering joint physical and legal custody of the child with Sean having final decisionmaking authority. The court also set forth an amended parenting plan, awarding the parties equal parenting time and ordering that transitions of parenting time should take place at school or daycare if possible. The parenting plan also placed a limitation on reporting abuse, stating that "[Kelly] shall not in the future report to any governmental agency, public officer, police or civil, any alleged acts of abuse by [Sean] against the minor child . . . without first obtaining permission of the trial Court."

The trial court also ordered a modification of child support, reducing Sean's child support obligation to $254 per month, based on Sean's employment income and excluding any rental

profits, commencing January 1, 2020, and setting forth an expense sharing plan for the child. The order also required that Kelly pay $5,000 in attorney fees to Sean.

Kelly now appeals.

## III. ASSIGNMENTS OF ERROR

Kelly assigns that the district court abused its discretion by: (1) failing to provide her an adequate opportunity to present her case; (2) finding that it was in the child's best interests to award Sean final decisionmaking authority; (3) finding a material change in circumstances warranting modification of the parties' parenting time; (4) imposing a limitation on reporting alleged acts of abuse by Sean against the parties' child without first obtaining permission of the trial court; (5) modifying the child support order by failing to provide a retroactive credit for Kelly, eliminating the upward deviation, ordering expense-sharing, and adopting Sean's proposed calculation; and (6) awarding Sean attorney fees.

## IV. STANDARD OF REVIEW

Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion by the trial court. *Tilson v. Tilson*, 307 Neb. 275, 948 N.W.2d 768 (2020). In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. *Id*. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

## V. ANALYSIS

### 1. KELLY'S OPPORTUNITY TO PRESENT HER CASE

Kelly first argues that the district court abused its discretion by failing to provide her an adequate opportunity to present her case. Specifically, Kelly argues that the district court erred in quashing her subpoena of Dr. Erin Louck, refusing to order a continuance to require the appearance of Kristina Johnson, failing to give her sufficient time to present her case, and placing unreasonable and unilateral restrictions on the presentation of evidence.

Kelly first argues that testimony from Louck and Johnson would authenticate various medical records which would contain information about the claims of abuse. However, all of the medical records in question, including Louck's clinical notes, Johnson's progress notes and forensic interview results, and the child's medical records, were received into evidence without needing authentication from either witness.

Kelly also argues that Louck's testimony was important to establish what information is relevant to trigger an obligation to mandatorily report suspected abuse, that the vaginal examination of the child she performed was required because of the child's urinary tract infection, why Louck made the report of suspected abuse, and that Louck was not improperly influenced in her reporting by the claims of Kelly. Kelly asserts that this testimony was necessary to establish that she acted appropriately in seeking medical attention for the child and making reports of suspected abuse of the child.

As noted above, Louck's affidavit was received into evidence in which she states that she is a mandatory reporter, and that she made a report regarding allegations of abuse concerning the child. Louck's clinical notes included the reasons for her medical examination. A copy of the progress notes made from Johnson's November 2018 forensic interview with the child at Project Harmony and a videotape of the interview were both entered into evidence as well. Further, Shana Romero, the social worker from the hospital emergency department, testified that she made a report regarding the November 2018 abuse allegations, based upon her mandatory obligation to report an allegation of abuse so they can be investigated by the appropriate authorities. Romero testified that Kelly did not influence her or insist that she make the report to the police department. Finally, Kelly herself testified to the reasons that she took the child in for the various examinations.

Thus, the substance of the testimony that Kelly wanted to introduce through Louck and Johnson was received through other evidence. Their additional testimony would have been cumulative. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Neb. Rev. Stat. § 27-403 (Reissue 2016). Kelly has not shown that she was prejudiced by her inability to question either Louck or Johnson at trial. Neb. Rev. Stat. § 27-103(1) (Reissue 2016) provides in relevant part that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." *Dick v. Koski Prof. Group*, 307 Neb. 599, 950 N.W.2d 321 (2020). We cannot say a substantial right was affected by the exclusion of these two witnesses.

Kelly also argues that the court limited her ability to present her case, pointing to the court's denial of her motion for a continuance in response to Johnson's failure to comply with the subpoena and the court's statements that it intended to finish the trial on the second scheduled day. However, Kelly does not specifically assign error to the denial of her motion for continuance. Absent plain error, errors argued but not assigned will not be considered on appeal. *Osantowski v. Osantowski,* 298 Neb. 339, 904 N.W.2d 251 (2017). Further, the trial did not end on the second day; rather, it continued over 2 additional days. Over the 4 days of trial, Kelly had ample time to present her case, through various witnesses and exhibits. Kelly was able to present evidence regarding her reasons for taking the child for medical examinations and pursuing the claims of abuse.

A trial judge has broad discretion over the conduct of a trial. *State v. Grant*, 293 Neb. 163, 876 N.W.2d 639 (2016). Based upon our review of the record in its entirety, we cannot say the district court abused its discretion in managing the conduct of this trial. We reject Kelly's first assigned error.

## 2. Sean's Final Decisionmaking Authority

In the amended parenting plan, the court maintained the joint legal custody between the parties. The plan requires that the parties discuss fundamental issues regarding the child's welfare, including choices regarding education, religious practice and health. In the event of an impasse regarding a major decision to be made on behalf of the child, Sean was given the final decisionmaking authority.

Kelly argues that the district court abused its discretion in finding that it is in the child's best interests for Sean to have final decisionmaking authority. Kelly asserts that Sean has unreasonably withheld consent for the child to receive mental and physical health treatment and an individualized education plan. Kelly argues that because she has been the vigilant parent with regard to these needs, she should have been awarded sole legal custody.

Both Kelly and Sean argued that joint legal custody is not workable in this case. Clearly, the parties disagree on significant issues concerning their child, and they have difficulties communicating, resulting in a strained coparenting relationship.

The best interests of the child are the primary consideration for developing custodial plans. *Blank v. Blank*, 303 Neb. 602, 930 N.W.2d 523 (2019). Joint legal custody means mutual authority and responsibility of the parents for making mutual fundamental decisions regarding the child's welfare, including choices regarding education and health. Neb. Rev. Stat. § 43-2922(11) (Supp. 2019). Here, while the court did not modify the joint legal custody of the parties, it did recognize and provide a mechanism for resolving disputes when the parties cannot agree by giving Sean final authority upon an impasse. It is a common occurrence and a court is permitted to supply a party with final decisionmaking authority in some areas to avoid future impasses which could negatively affect the child while maintaining both parents' rights to consultation and participation in important decisions. *Blank v. Blank, supra*.

Upon review of the record, it is apparent that both parties have acted out of their concern for their child and have her best interests at heart. However, there was clearly a fundamental difference of opinion between the parents as to whether the child had been subjected to abuse or trauma, and what treatment would be in her best interests. Under these circumstances, awarding one party final decisionmaking authority upon impasse was necessary due to the parents' inability to agree on these issues.

In contested custody cases, where material issues of fact are in great dispute, the standard of review and the amount of deference granted to the trial judge, who heard and observed the witnesses testify, are often dispositive of whether the trial court's determination is affirmed or reversed on appeal. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). Given that the trial judge was able to hear and observe the parties, we cannot say that the district court abused its decision in maintaining joint legal custody but giving Sean final decisionmaking authority. As noted above, the parenting plan still requires the parties to discuss fundamental issues regarding the child's welfare in an effort to agree upon what is in her best interests.

### 3. MODIFICATION OF PARENTING TIME SCHEDULE

Kelly argues that the district court abused its discretion by finding a material change in circumstances occurred warranting a modification of the parties' parenting time schedule. Based on the recommendation of Dr. Cottam, the district court changed the parties' parenting time schedule so that transfer of the child would take place at school, resulting in Sean being awarded an extra overnight (Sundays) with the child. Kelly argues that this is an abuse of discretion because it contradicts the original parenting plan and there was conflicting testimony about whether or not transfers created tension and anxiety for the child.

Visitation rights established by a marital dissolution decree may be modified upon a showing of a material change of circumstances affecting the best interests of the children.

*VanSkiver v. VanSkiver*, 303 Neb. 554, 930 N.W.2d 569 (2019). A material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Id*. The party seeking to modify visitation has the burden to show a material change in circumstances affecting the best interests of the child. *Id*. The best interests of the children are primary and paramount considerations in determining and modifying visitation rights. *Id*.

Although Kelly testified that the exchanges were mostly uneventful, Sean testified that the transitions at the parents' households cause the child anxiety, and she becomes emotional prior to leaving transitions. According to Sean, Kelly prolongs the transitions at her house, requiring Sean to physically take the child out of Kelly's arms. Further, Dr. Cottam testified that altering the parenting time schedule so that these exchanges could take place at school would minimize the tension and anxiety for the child and was in her best interests. We cannot say that changing the parenting schedule by altering the exchange locations was an abuse of discretion.

### 4. LIMITATION ON REPORTING ALLEGED ABUSE

Kelly assigns that the district court abused its discretion by imposing a limitation on her reporting alleged acts of abuse by Sean against the child without first obtaining permission of the trial court. Specifically, Kelly argues that this limitation is contrary to the child's best interests and that it violates Neb. Rev. Stat. § 28-711(1) (Reissue 2016), which provides:

> When any physician, any medical institution, any nurse, any school employee, any social worker, the Inspector General appointed under section 43-4317, or any other person has reasonable cause to believe that a child has been subjected to child abuse or neglect or observes such child being subjected to conditions or circumstances which reasonably would result in child abuse or neglect, he or she shall report such incident or cause a report of child abuse or neglect to be made to the proper law enforcement agency or to the department on the toll-free number established by subsection (2) of this section.

Kelly argues that any limitation on her ability to report alleged abuse subjects her to criminal penalties under Neb. Rev. Stat. § 28-717 (Reissue 2016) and violates public policy.

The record shows that Kelly has a history of reporting allegations of abuse against Sean to law enforcement or other agencies which have proven to be unfounded. While we understand the district court's concern about repeated reports of abuse by Kelly and the potential of subjecting the child to further investigations and examinations, we question the court's authority to limit the ability of a parent to report future concerns of abuse. The language of § 28-711(1) makes it mandatory for any person who has reasonable cause to believe a child has been subjected to child abuse or neglect to report to a law enforcement agency. Placing a limitation on a parent's ability to report appears to run afoul of the statute and be contrary to the best interests of the child. Thus, we reverse the order of the district court and remand to the district court with directions to eliminate this provision. In reaching this conclusion, we note that the parenting plan allows either parent to make emergency decisions affecting the health or safety of the child while the child is in his or her physical custody. And, providing Sean with final decisionmaking authority regarding the child's medical needs should reduce the risk of unnecessary examinations of the child.

## 5. CHILD SUPPORT ORDER

Kelly assigns that the district court abused its discretion in modifying the child support order by failing to award Kelly retroactive credit for providing health insurance for the child, by eliminating the upward deviation and ordering expense sharing, and by adopting Sean's proposed child support calculation. Kelly does not assign that there had not been a material change in circumstances warranting modification of support; rather, she challenges the modifications that were made.

In general, child support payments should be set according to the Nebraska Child Support Guidelines. *Hotz v. Hotz*, 301 Neb. 102, 917 N.W.2d 467 (2018). Child support established under the Nebraska Child Support Guidelines is presumed correct, unless one or both parties present sufficient evidence to rebut that presumption. *State on behalf of Mariah B. & Renee B. v. Kyle B.*, 298 Neb. 759, 906 N.W.2d 17 (2018).

In this case, the district court found that a material change in circumstances regarding the parties' respective income had occurred since the entry of the decree which justified a modification of Sean's child support obligation effective January 1, 2020. The court adopted Sean's amended proposed child support calculation, with a recalibration of the parties' insurance deductions and Kelly's insurance deduction for the child.

### (a) Retroactive Credit

Kelly argues that the district court abused its discretion in failing to award her retroactive credit for providing health insurance for the child beginning in November 2018. At the time of the original decree, Sean was employed at Union Pacific, however, he subsequently lost this job due to a reduction in force and he no longer had health insurance coverage for the child. The parties agreed that Kelly would provide health insurance coverage for the child through her employment. In its order, the district court did not specifically address retroactive credit for Kelly's provision of health insurance for the child. However, the court noted that both parties asked for retroactive support calculations. Because the court modified the parenting plan to incorporate an equal parenting time schedule which would affect the child support calculation, the court declined to modify the support retroactively, instead modifying the support to the date the guideline amendments were effective, January 1, 2020. Kelly does not assign error to the date of the modification of the child support; she only argues that she should have received retroactive credit for providing health insurance for the child.

Whether a child support order should be retroactive is entrusted to the discretion of the trial court and will be affirmed absent an abuse of discretion. *Johnson v. Johnson*, 290 Neb. 838, 862 N.W.2d 740 (2015). The granting of retroactive child support is influenced by the equities of each case. *Riggs v. Riggs*, 261 Neb. 344, 622 N.W.2d 861 (2001).

The testimony was uncontroverted that Kelly began paying the child's health insurance premium on November 1, 2018, and continued through the time of trial. However, at all times when Kelly was paying the health insurance premiums for the child, the upward deviation was in place which more than offset Kelly's increased expense. The equities of the case do not justify awarding Kelly retroactive credit for the premiums paid, as she was already receiving an increased amount of support. Therefore, we cannot say that the district court abused its discretion in declining to award Kelly a retroactive credit for insurance premiums paid.

### (b) Eliminating Upward Deviation

At the time of the original decree, the parties agreed that Sean would pay Kelly $1,000 per month, which was an upward deviation from the child support guidelines at the time. The parties agreed to this deviation in lieu of using the joint custody expense sharing provision under Section 4-212 of the Nebraska Child Support Guidelines. In its order of modification, the court utilized the joint physical custody child support worksheet and provided for expense sharing. Kelly argues that the district court abused its discretion in eliminating the originally agreed-upon upward deviation in its child support calculation and in ordering the parties to share expenses as defined by § 4-212 of the guidelines.

A court may deviate from the guidelines if its application in an individual case would be unjust or inappropriate. *Hotz v. Hotz, supra*. Deviations from the guidelines must also take into consideration the best interests of the child or children. *Id*. Section 4-212 of the child support guidelines provides that when support is calculated using the joint physical custody worksheet, all reasonable and necessary direct expenditures made for the child such as clothing and extracurricular activities shall be allocated between the parents based upon their percentage of support obligation.

In this case, the trial court eliminated the upward deviation because both parties were seeking modification of child support, there was no stipulation to deviate from the guidelines, and there was no good cause to deviate. While the trial court had the authority under the guidelines to provide for an upward deviation without the parties' agreement, we find no abuse of discretion by the court in declining to do so and in ordering child support based upon the joint physical custody worksheet. And, since the trial court included the necessary provision for expense-sharing when support is determined using the joint physical custody worksheet, the justification for the upward deviation was no longer present. Although the parties clearly have communication difficulties, we find no abuse of discretion in the court's determination that § 4-212 of the guidelines should be implemented. The court's order gives explicit directions regarding the provision of expense statements with supporting documentation and the reimbursement requirements.

### (c) Use of Sean's Proposed Child Support Calculation

Kelly argues that the district court abused its discretion in using Sean's proposed child support calculation, requiring Sean to pay Kelly $254 per month, beginning January 1, 2020. Specifically, Kelly argues that the district court improperly calculated Sean's income, failing to recognize income from Sean's rental properties and a vehicle reimbursement of $376 per month from his employer. Kelly also argues that the district court improperly calculated her income because she had accepted a salaried position in August 2019, eliminating her ability to earn overtime.

In calculating child support, the total monthly income of a parent should include earnings "derived from all sources." Neb. Ct. R. § 4-204 (rev. 2016). The Nebraska Supreme Court has not set forth a rigid definition of what constitutes income, but instead has relied upon a flexible, fact-specific inquiry that recognizes the wide variety of circumstances that may be present in child support cases. *Marshall v. Marshall*, 298 Neb. 1, 902 N.W.2d 223 (2017). Thus, income for the purposes of calculating child support is not necessarily synonymous with taxable income. *Id.* This

flexible approach in determining a person's income for purposes of child support is taken, because child support proceedings are, despite the child support guidelines, equitable in nature. *Id.*
Sean presented evidence through his testimony and his 2017 and 2018 tax returns that his rental income is consumed by the related expenses, such that he suffered losses from these businesses. The court did not include the vehicle reimbursement from Sean's employment as it was reimbursement for the wear and tear on his personal vehicle for business related travel. We cannot say the district court abused its discretion in not including any rental income or vehicle reimbursement as income for calculating child support. However, we do find that the trial court erred in using Kelly's 2018 income rather than her current income, which is a more accurate reflection of her earnings following her transition to a salaried position. The child support guidelines indicate that in calculating a parent's total monthly income,

> [t]he court may consider overtime wages in determining child support if the overtime is a regular part of the employment and the employee can actually expect to regularly earn a certain amount of income from working overtime. In determining whether working overtime is a regular part of employment, the court may consider such factors as the work history of the employee for the employer, the degree of control the employee has over work conditions, and the nature of the employer's business or industry.

Neb. Ct. R. § 4-204.

Kelly testified that in her new salaried position, she is unable to earn overtime pay. Kelly's most recent pay stub admitted at trial shows that she is earning a biweekly gross salary of $2,564.08, which computes to $66,666 per year, or $5,555.50 per month. We conclude that the district court erred in using Kelly's 2018 income of $6,349.35 per month in calculating child support and that it should have used the sum of $5,555.50. We reverse the award of child support and remand to the district court with directions to recalculate child support using Kelly's current income.

### 6. ATTORNEY FEES

In her final assignment of error, Kelly assigns that the district court abused its discretion in awarding Sean $5,000 in attorney fees. The court based its award "on the enlargement of the proceedings by [Kelly]."

In an action for modification of a dissolution decree, the award of attorney fees is left to the discretion of the trial court and, on appeal, is reviewed de novo on the record and will be affirmed in the absence of an abuse of discretion. *Tilson v. Tilson*, 307 Neb. 275, 948 N.W.2d 768 (2020); *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014). Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Moore v. Moore*, 302 Neb. 588, 924 N.W.2d 314 (2019). In dissolution cases, as a matter of custom, attorney fees and costs are awarded to prevailing parties. *Id.* A uniform course of procedure exists in Nebraska for the award of attorney fees in dissolution cases. *Id.*

Attorney fees shall be awarded against a party who alleged a claim or defense that the court determined was frivolous, interposed any part of the action solely for delay or harassment, or unnecessarily expanded the proceeding by other improper conduct. *Id.*

Kelly argued that any enlargement of the proceedings was due to the complex nature of the issues before the parties and their differing perspectives on the appropriate care for their child. Clearly, a significant part of these proceedings concerned Kelly's allegations of abuse toward the child, which the record reflects were unfounded. Further, the proceedings were lengthened as a result of Kelly's efforts to secure sole physical custody, which were unsuccessful. Sean was not only successful in challenging Kelly's complaint for modification, but he also prevailed on his counterclaim. Therefore, the award of attorney fees was not an abuse of discretion.

## VI. CONCLUSION

For the foregoing reasons, we affirm the decision of the district court with regard to providing Sean with final decisionmaking authority, the modification of the parenting plan, and the award of attorney fees. We reverse the provision in the order which placed a limitation on Kelly's reporting of alleged abuse and remand to the district court with instructions to eliminate this provision. We reverse the modification of child support to the extent it utilized Kelly's 2018 income, and we remand with directions to recalculate the child support obligation using Kelly's current income as set forth above.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.